IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:21-cr-110 |
| Plaintiff, | : | |
| | : | Judge Matthew W. McFarland |
| v. | : | |
| JTTON WATSON, | : | |
| Defendant. | : | |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

On November 15, 2021, Defendant Jtton Watson filed a Motion to Suppress (Doc. 27). The Government then filed its initial response in opposition (Doc. 58). The Court held an evidentiary hearing on July 14, 2022 and ordered supplemental briefing by the parties. Defendant filed his supplemental memorandum (Doc. 60) on August 1, 2022, and the Government filed its supplemental memorandum (Doc. 61) on August 19, 2022.

Following the conclusion of the briefing schedule, the Court was informed that evidence related to the Motion to Suppress had been recently discovered. (*See* Minute Entry, September 2, 2022.) Due to the nature of the recently discovered evidence, the Court ordered additional briefing on the motion. Each party timely filed their supplemental briefs. (*See* Docs. 63 & 64.) Thus, the matter is fully briefed and ripe for review.

For the reasons stated below, Defendant's Motion to Suppress (Doc. 27) is

1

**DENIED**.

## FACTS

On December 5, 2020, Officer Homer Wisecup, a patrol officer for the Wilmington Police Department, was on patrol from 6:00 PM to 4:00 AM the following morning. (Transcript, Doc. 59, Pg. ID 329.) While on duty, Officer Wisecup received a phone call from Sergeant Meehan with the Clinton County Sherriff's Office. (*Id.* at Pg. ID 332.) Sergeant Meehan informed Officer Wisecup that, while Sergeant Meehan was on duty earlier in the day, he encountered an individual who refused to identify himself. (*Id.*) He then identified Defendant Jtton Watson as the individual he encountered. (*Id.* at Pg. ID 335.) Sergeant Meehan informed Officer Wisecup of the make, model, license plate number and a description of the vehicle Defendant was driving. (*Id.* at Pg. ID 333.) Lastly, Sergeant Meehan informed Officer Wisecup that Defendant's license was suspended. (*Id.*) Defendant's license was suspended on July 26, 2019, and such suspension was to remain in effect through July 26, 2022. (Government Exhibit 4, Defendant BMV Records.)

Later in his shift, Officer Wisecup saw a vehicle matching the description provided by Sergeant Meehan. (Transcript, Doc. 59, Pg. ID 332-33, 358.) Officer Wisecup had dispatch run Defendant's information, which verified that Defendant's license was in fact suspended. (*Id.* at Pg. ID 335) He then witnessed Defendant cross the stop bar at a traffic light in violation of Ohio law. (*Id.* at Pg. ID 362.)

Thereafter, Officer Wisecup stopped Defendant at a Speedway gas station on Locus Street in Wilmington, Ohio. (*Id.* at Pg. ID 334.) Officer Wisecup wore a body camera and recorded the encounter. (*Id.* at Pg. ID 333.) The body camera footage was admitted

2

into evidence at the evidentiary hearing as Government's Exhibit 1. Additionally, Defendant recorded the stop, and such recording has been submitted to the Court.

Once Officer Wisecup stopped Defendant, he informed Defendant that his license was "coming back suspended." (Government Exhibit 1, 00:00:38-00:00:44.) He also informed Defendant that he witnessed Defendant pull past the stop bar at a traffic light. (*Id.* at 00:01:15-00:01:20.) Officer Wisecup then asked Defendant for his driver's license. (Transcript, Doc. 59, Pg. ID 341.) Defendant refused the request but claimed to have identification on him. (*Id.*) However, Defendant also refused to turn over any alleged identification he claimed to have. (*Id.*) Officer Wisecup then requested backup. (*Id.* at Pg. ID 343.)

Despite the arrival of additional officers, Defendant still refused to properly identify himself. (Government Exhibit 1, 0:03:20.) Therefore, the officers asked Defendant to exit the vehicle. (Transcript, Doc. 59, Pg. ID 344.) Initially, he refused to do so. (Government Exhibit 1, 00:03:32.) After over one minute, Defendant exited the vehicle. (Id. at 00:03:33-00:04:45) Defendant continued to refuse to properly identify himself, despite the officers' continuous requests. (Transcript, Doc. 59, Pg. ID 345.) He also refused to give Officer Wisecup any information requested. (*Id.*) Therefore, the officers placed Defendant under arrest. (Government Exhibit 1, 00:05:10.)

Following Defendant's arrest, Officer Wisecup looked into the vehicle and identified a bag of marijuana in the center console. (Government Exhibit 1, 00:09:07.) Thereafter, the officers unlocked Defendant's vehicle with a "Slim Jim." (Transcript, Doc. 59, Pg. ID 373-374.) Officers then searched the vehicle and located the bag of marijuana.

(*Id.* at Pg. ID 354.) Additionally, officers noticed a metal lockbox that had the key in the lock. (*Id.*) A firearm with ammunition was found inside of the lockbox. (*Id.*)

Defendant was arrested for failing to properly identify himself, in violation of Ohio Rev. Code § 2921.29(A)(1), which constitutes a fourth-degree misdemeanor. (Defendant Complaint, Government Exhibit 3.) He also received a traffic citation for driving with a suspended license, in violation of Ohio Rev. Code § 4510.11, and a minor misdemeanor for possession of a controlled substance, in violation Ohio Rev. Code § 2925.11. (*Id; see also* Transcript, Doc. 59, Pg. ID 354-55.)

The Wilmington Police Department has specific policies relating to the towing, searching and inventorying of vehicles following an arrest. (Wilmington PD Policy Manual, Government Exhibit 2.) First, the Department has a policy to tow vehicles at arrest scenes. (*Id.*) Such policy states, "[w]henever a person in charge or in control of a vehicle is arrested, it is the policy of this department to provide reasonable safekeeping by towing the arrestee's vehicle . . ." (*Id.*) Second, the Department has a vehicle inventory policy, which states "[a]ll property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form." (*Id.*) Additionally, the vehicle inventory policy specifically requires the search and inventory of "the trunk and any compartments or containers, even if they are closed and/or locked." (*Id.*)

Following Defendant's arrest, his vehicle was towed, searched and inventoried in accordance with Wilmington Police Department policy. (Transcript, Doc. 59, Pg. ID 354, 375.) During the search, Officer Ianson found the bag of marijuana that was identified at the scene by Officer Wisecup. (*Id.* at Pg. ID 354.) Officer Ianson also located the metal

4

lockbox that contained the firearm and ammunition. (*Id.*) Officer Wisecup testified at the evidentiary hearing that, based on his training and experience, Officer Ianson's search and inventory of Defendant's vehicle complied with Wilmington Police Department's policy. (*Id.*)

Defendant was indicted on October 14, 2021 for possession of a firearm by a prohibited person in connection to the firearm found in his vehicle on December 5, 2020. (Indictment, Doc. 21, Pg. ID 51.) Defendant now seeks to suppress all evidence obtained from his vehicle, including the firearm, arguing that the traffic stop and search of his vehicle violated his Fourth Amendment rights.

## LAW

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. CONST. am. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Katz v. U.S.*, 389 U.S. 347, 357 (1967). Evidence "seized in searches and seizures that are deemed unreasonable" and evidence "acquired as a result of an unlawful search" are inadmissible pursuant to the exclusionary rule. *U.S. v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995). However, as described in more detail below, it is well settled law that exceptions to the exclusionary rule exist.

A defendant may assert a violation of the Fourth Amendment and seek suppression of evidence by filing a pretrial motion. *See* Fed. R. Crim. P. 12(b)(3)(C). When

a defendant seeks to suppress evidence, the defendant has the burden of proof "to display a violation of some constitutional or statutory right justifying suppression." *U.S. v. Rodriquez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). However, it is the Government's burden to prove that a warrantless search was not unconstitutional. *U.S. v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002).

## ANALYSIS

### A. The Traffic Stop Was Constitutionally Valid.

"Stopping and detaining a motorist constitutes a seizure within the meaning of the Fourth Amendment." *U.S. v. Bell*, 555 F.3d 525, 539 (6th Cir. 2009). "The question of whether a particular traffic stop passes constitutional muster is analyzed under the standard of temporary detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny." *U.S. v. Winters*, 782 F.3d 289, 295-96 (6th Cir. 2015). Under such framework, a stop must "(1) be justified at its inception and (2) reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 296.

Whether a traffic stop is constitutional is not based on "the actual motivations of the individual officers involved." *Whren v. U.S.*, 517 U.S. 806, 813 (1996). Rather, the Sixth Circuit applies two separate tests to determine the constitutionality of a traffic stop: an officer must possess either "probable cause to make a stop for a civil infraction" or "reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *U.S. v. Collazo*, 818 F.3d 247, 253-54 (6th Cir. 2016).

### a. Officer Wisecup Possessed Probable Cause of a Civil Infraction.

"Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *Collazo*, 818 F.3d at 254. Probable cause "does not require an actual finding of a violation[;] rather, a probability or substantial chance of criminal activity is all that is required." *Id.* To determine if an officer possessed probable cause that a defendant was committing a traffic or civil violation, a court must determine that the officer knew or reasonably believed "that the driver of the car is doing something that represents a violation of law." *U.S. v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010). Such an inquiry is determined based on the totality of the circumstances. *U.S. v. Barrett*, 890 F.2d 855, 862 (6th Cir. 1989).

At the evidentiary hearing, Officer Wisecup testified that, prior to stopping Defendant, he witnessed Defendant pull past the stop bar at a red traffic light. (Transcript, Doc. 59, Pg. ID 362.) He also informed Defendant that he was pulled over for crossing the stop bar at the traffic light. (Government Exhibit 1, 00:01:15-00:01:20.) Pursuant to Ohio Rev. Code § 4511.13, "[v]ehicular traffic . . . facing a steady circular red signal indication, unless entering the intersection to make another movement permitted by another signal indication, shall stop at a clearly marked stop line . . ." A violation of Ohio Rev. Code § 4511.13 constitutes a traffic violation. Thus, because Officer Wisecup witnessed firsthand Defendant pulling past the stop bar, he possessed "reasonable ground for belief" that Defendant committed a traffic violation. *See Collazo*, 818 F.3d at 254.

Defendant argues that the supplemental video footage of the traffic stop shows that Defendant did not, in fact, cross the stop bar prior to Officer Wisecup conducting the

7

traffic stop. As an initial matter, the Court finds the supplemental video evidence to be inconclusive. However, whether Defendant actually crossed the stop bar in violation of Ohio Rev. Code § 4511.13 is not the question this Court must determine. On the contrary, the question is whether Officer Wisecup "reasonably believed" that Defendant committed the traffic violation. *Hughes*, 606 F.3d at 316. Here, Officer Wisecup testified that he witnessed Defendant pull past the stop bar. (Transcript, Doc. 59, Pg. ID 262.) He also informed Defendant that he had pulled past the stop bar within one minute of conducting the stop. (Government Exhibit 1, 00:00:31-00:01:20.) Thus, the evidence before the Court reflects that Officer Wisecup reasonably believed that Defendant failed to stop at the stop bar in violation of Ohio Rev. Code § 4511.13.

Therefore, Officer Wisecup possessed probable cause that Defendant had committed a traffic violation.

### b. Officer Wiseup Possessed Reasonable Suspicion of Ongoing Criminal Activity.

However, even if an officer lacks probable cause that a civil infraction occurred, a stop is still constitutionally valid if the officer had reasonable suspicion of ongoing criminal activity. *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). The Sixth Circuit has held "that a seizure for an ongoing violation of any crime—no matter how minor—is governed by the standard of reasonable suspicion, not probable cause." *U.S. v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008). Reasonable suspicion requires:

> [m]ore than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard. If an officer possesses a particularized and objective basis for suspecting the particular person of

8

>criminal activity based on specific and articulable facts, he may conduct a *Terry* stop.

*Id.* (citing *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008)).

Courts must look to the totality of the circumstances to determine if an officer had reasonable suspicion that criminal activity is afoot. *Id.* "Pertinent circumstances include the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred." *Id.* (quoting *U.S. v. Campbell*, 549 F.3d 364, 370-71 (6th Cir. 2008)). Pursuant to the "collective knowledge doctrine," courts may consider "all of the information available to law enforcement personnel" when determining if reasonable suspicion exists. *U.S. v. Dickens*, 768 F.App'x 31, 39 (6th Cir. 2018).

Defendant makes a single, broad contention relating to whether Officer Wisecup had reasonable suspicion to stop Defendant: "The Officer lacked reasonable suspicion to stop Defendant because they observed no traffic violation or no criminal activity." (Supplemental Memorandum in Support, Doc. 60, Pg. ID 395.) However, the Court disagrees. Officer Wisecup was informed on the day of the arrest by Sergeant Meehan that Defendant had been driving with a suspended license, in violation of Ohio Rev. Code § 4510.11. (Transcript, Doc. 59, Pg. ID 332.) Sergeant Meehan informed Officer Wisecup of the make, model, license plate number and a description of Defendant's vehicle. (*Id.* at Pg. ID 333.) Then, Officer Wisecup saw a vehicle that matched the description previously provided by Sergeant Meehan. (*Id.* at Pg. ID 332-33.) He called the license plate into dispatch, who confirmed his suspicions: Defendant's license was suspended. (*Id.* at Pg.

9

ID 335.) Thus, considering the totality of the circumstances, including Sergeant Meehan's information, dispatch's information, and Officer Wisecup's own direct observations, Officer Wisecup had a particularized and objective basis for suspecting that Defendant was driving with a suspended license in violation of Ohio law. Officer Wisecup had reasonable suspicion of ongoing criminal activity.

Therefore, because Officer Wisecup had probable cause that Defendant committed a traffic violation and reasonable suspicion of ongoing criminal activity, the traffic stop was constitutionally valid.

### B. The Inevitable Discovery Exception Applies Here.

Next, the Court turns to the Government's argument that the inevitable discovery doctrine applies in this instance.[1] In *Nix v. Williams*, the Supreme Court adopted the inevitable discovery doctrine as an exception to the exclusionary rule. 467 U.S. 431, 443 (1984). "The inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." *U.S. v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022) (cleaned up). It is the Government's burden to show, by a preponderance of the evidence, "that the [evidence] ultimately or inevitably would have been discovered by lawful means . . ." *Nix*, 467 U.S. 444.

The Sixth Circuit has outlined two scenarios where the inevitable discovery exception applies. *Cooper*, 24 F.4th at 1091. First, the exception applies when "an

---

[1] The Government also argues that the automobile and plain view exceptions apply to the initial search of Defendant's vehicle. However, because the Court finds that the evidence obtained ultimately and inevitably would have been discovered by lawful means, thereby satisfying the inevitable discovery exception, the Court need not address the automobile or plain view exceptions.

10

independent, untainted investigation" was bound to uncover the evidence. *Kennedy*, 61 F.3d at 499. It is undisputed that such scenario does not apply here. Second, the inevitable discovery exception applies "when other compelling facts demonstrate that discovery was inevitable." *Cooper*, 24 F.4th at 1091 (internal quotations omitted).

This case falls into the second scenario outlined above. Defendant was arrested by officers with the Wilmington Police Department. (Transcript, Doc. 59, Pg. ID 329.) The Wilmington Police Department has a policy mandating the towing of vehicles at arrest scenes. (Wilmington PD Policy Manual, Government Exhibit 2.) Specifically, the policy states, "[w]henever a person in charge or in control of a vehicle is arrested, it is the policy of this department to provide reasonable safekeeping by towing the arrestee's vehicle . . ." (*Id.*) The Department also has a policy regarding inventory searches of vehicles towed and impounded. (*Id.*) Such policy states, "[a]ll property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form." (*Id.*) Additionally, the policy specifically requires the search and inventory of "the trunk and any compartments or containers, even if they are closed and/or locked." (*Id.*)

After Defendant's arrest, his vehicle was towed, searched and inventoried in accordance with the policies outlined above. (Transcript, Doc. 59, Pg. ID 354.) During the search of Defendant's vehicle while impounded, Officer Ianson found the bag of marijuana that was identified at the scene by Officer Wisecup. (*Id.* at Pg. ID 354.) Officer Ianson also located the metal lockbox that contained the firearm and ammunition. (*Id.*) Lastly, Officer Wisecup testified that, based on his training and experience, Officer Ianson's search and inventory of Defendant's vehicle while impounded complied with

11

Wilmington Police Department's policy manual. (*Id.*) Therefore, compelling facts demonstrate that discovery of the evidence within Defendant's vehicle was inevitable.

The Court finds that the government satisfied its burden to show, by a preponderance of the evidence, that the evidence would have been discovered by lawful means. Thus, the inevitable discovery doctrine applies.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress (Doc. 27) is **DENIED**. The evidence obtained from Defendant's vehicle is **ADMISSIBLE**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND