IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| *Plaintiff*, | : |
| v. | : Case No. 1:21-cr-110 |
| JTTONALI ONE EYE EL BEY, | : |
| ("Jtton Watson") | : Judge Jeffery P. Hopkins |
| *Defendant*. | : |

**OPINION AND ORDER**

This matter is before the Court for consideration of the Defendant JttonAli One Eye El Bey's (the "Defendant") Motion to Dismiss (Doc. 90) (the "Motion") pursuant to Fed. R. Crim. P. 12(b)(3)(B). After review of the Motion and responsive memoranda (Docs. 92, 95), the Defendant's Motion is **DENIED**.

**I.    BACKGROUND**

On or about December 5, 2020, an officer of the Wilmington Police Department ("WPD") initiated a traffic stop of the Defendant for driving with a suspended license and for failing to stop at or behind the stop bar (*i.e.,* the thick white line that serves as a barrier for entering an intersection). Doc. 1, PageID 4–5. During his interaction with the officer, the Defendant refused to identify himself. *Id.* at PageID 5. After arresting the Defendant, WPD officers observed marijuana through the windows of the Defendant's truck. *Id.* Officers then searched the vehicle, where they found a bag of marijuana and a lockbox in the center floorboard area of the truck with a key in the lock. *Id.* Officers then found a loaded Taurus

PT111 9mm handgun (SN: TAP76805), along with 10 rounds of ammunition, in the lockbox. *Id.* at PageID 5–6.

Law enforcement subsequently learned that the Defendant had prior felony convictions out of the Clinton County, Ohio Court of Common Pleas. *Id.* at PageID 6. In March 1999, the Defendant was convicted of felonious assault and sentenced to serve two years in state prison. *Id.* In March 2007, the Defendant was convicted of felonious kidnapping and felonious assault and sentenced to serve six years in state prison. *Id.* Accordingly, the Defendant was federally prohibited from possessing a firearm on December 5, 2020. *Id.*

On October 5, 2021, an arrest warrant was issued on a Complaint signed by United States Magistrate Judge Karen L. Litkovitz for one count of Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1). *Id.* at PageID 1. The Defendant was arrested the same day. Doc. 7, PageID 17. He was indicted on October 14, 2021. Doc. 21.

The Defendant submitted the present Motion on November 8, 2023, arguing for the dismissal of the indictment. Doc. 90.

**II.   STANDARD OF REVIEW**

Under Federal Rule of Criminal Procedure 12(b)(1), a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." The Defendant raises a defect in the indictment under Rule 12(b)(3)(B), alleging that the crime charged is unconstitutional. As here, when a defendant moves to dismiss an indictment, the court must "take the government's allegations as true." *United States v. Palma*, 58 F.4th 246, 250 (6th Cir. 2023).

### III. LAW AND ANALYSIS

The Defendant challenges 18 U.S.C. § 922(g)(1), the federal felon-in-possession-of-a-firearm statute, on the grounds that it violates his Second Amendment rights, as defined in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *See generally*, Doc. 90. For the reasons that follow, the Defendant's challenge under *Bruen* is without merit.

#### A. Second Amendment Law.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *District of Columbia v. Heller*, the Supreme Court of the United States held that the Second Amendment protects an individual's right to keep a firearm in their home for self-defense. 554 U.S. 570, 635 (2008). Although *Heller* did not "undertake an exhaustive historical analysis [] of the full scope" of that right, the Supreme Court stated, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626; *see also id.* at 627 n.26 (identifying these as examples of prohibitions that are "presumptively lawful").

Since *Heller*, the Sixth Circuit has consistently held that 18 U.S.C. § 922(g)(1) is constitutional. *See, e.g.*, *United States v. Frazier*, 314 F. App'x 801, 807 (6th Cir. 2008) (holding convictions under 18 U.S.C. § 922(g)(1) do not violate the Second Amendment); *United States v. Khami*, 362 F. App'x 501, 507–08 (6th Cir. 2010) (relying on the "longstanding prohibitions" language from *Heller* to hold 18 U.S.C. § 922(g)(1) constitutional); *United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir. 2010) (same). Importantly, the Sixth Circuit expressly affirmed the constitutionality of disarming felons, citing the above language from

3

*Heller*. *See United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) ("Congress's prohibition on felon possession of firearms is constitutional . . . ."). *Carey* remains binding precedent on this Court unless overruled by *Bruen*. It was not.

      **B.**     *****Heller*** **and** ***Carey*** **Remain Binding Precedent.**

The Supreme Court's decision in *Bruen* does not relieve this Court from following *Heller* or *Carey* for two reasons.

First, *Bruen* did not overturn or abrogate *Heller* or *Carey*. In *Bruen*, the Supreme Court struck down a New York state gun regulation and held "consistent with *Heller*, . . . the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122. In doing so, the Supreme Court laid out the framework for "applying the Second Amendment" as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

*Id.* at 2129–30. *Bruen* thus abrogated prior decisions relying on means-end scrutiny to evaluate laws under the Second Amendment, which does not include *Heller*. *Id.* at 2127 ("*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."). In short, the *Bruen* Court did not overturn *Heller* or abrogate *Carey*: it altered the test for applying the Second Amendment. *See United States v. MacKey*, No. 2:23-cr-67, 2023 WL 8093071, at *2 (S.D. Ohio Nov. 21, 2023).

Second, *Bruen* is distinguishable from the issue posed by the federal felon-in-possession-of-a-firearm statute. The Supreme Court in *Bruen* struck down the portion of New

4

York's handgun licensing regime that "prevent[ed] *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms." *Mackey*, 2023 WL 8093071 at *2 (quoting Bruen, 142 S. Ct. at 2156). The rights of non-law-abiding citizens, like felons, were not at issue. Six-justices also explicitly found *Bruen* did not overrule the portion of *Heller* that the Sixth Circuit relied on in *Carey*, which upheld the constitutionality of disarming felons. *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm . . . . Nor have we disturbed anything that we said in [*Heller*] about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 2162 (Kavanaugh, J., concurring) ("Nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." (quoting *Heller*, 554 U.S. at 626)); *id.* at 2189 (Breyer, J., dissenting) ("Like Justice KAVANAUGH, I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding.").

This Court finds that the Sixth Circuit decision in *Carey* upholding the constitutionality of 18 U.S.C. § 922(g)(1) remains good law after *Bruen* and this Court therefore remains bound by that precedent. *See United States v. Vaughn*, Case No. 23-5790, 2023 U.S. App. LEXIS 25818, at *3 (6th Cir. Sep. 28, 2023) ("[W]e unambiguously held in *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010), that felon-in-possession statutes do not violate the Second Amendment, and that remains the binding law in this circuit.").

Because the Court is still bound by *Carey*, and because *Carey* forecloses Defendant's arguments, the Motion is denied.

5

### C. The *Bruen* Test.

Similarly, the Defendant's Motion also fails under the *Bruen* framework. Under the *Bruen* test, courts must determine "(1) whether the Second Amendment's plain text protects the conduct and, if so, (2) whether the government can justify the law by demonstrating consistency with the Nation's history of firearm regulation." *United States v. Ramadan*, No. 22-1243, 2023 WL 6634293, at *2 (6th Cir. Oct. 12, 2023) (citing *Bruen*, 142 S. Ct. at 2129–30).

The Defendant argues that his possession of a firearm is protected under *Bruen* because it falls within the plain text of the Second Amendment. Doc. 90, PageID 617–19. The Defendant further argues that 18 U.S.C. § 922(g)(1) is unconstitutional – both facially and as applied to felons like him – because the Government cannot meet its burden to justify the statute. *Id.* at PageID 626–29. However, the Defendant's interpretation of *Bruen* is misplaced, therefore his Motion fails.

### i. The Plain Text of the Second Amendment Does Not Protect Defendant's Conduct.

As a threshold matter, the plain text of the Second Amendment does not protect a felon's right to possess firearms. The Sixth Circuit recently instructed in *Vaughn* that "felon-in-possession statues do not violate the Second Amendment." 2023 U.S. App. LEXIS 25818, at *3. We are bound by the Sixth Circuit's interpretation.

### ii. The Government Has Fulfilled Its Burden to Show 18 U.S.C. § 922(g)(1) Is Consistent with the Nation's Historical Tradition of Firearm Regulation.

Even if the text did protect the Defendant's conduct, the Government has met its burden of showing that prohibitions on felons in possession of firearms is consistent with the nation's historical tradition of firearm regulation. *Bruen* makes clear that "analogical reasoning requires only that the government identify a well-established and representative

historical analogue, not a historical twin." 142 S. Ct. at 2133 (emphasis omitted). The Government has done that here.

The Government laid out laws and legislative history surrounding disarmament of those deemed untrustworthy, dating as far back as 1689. Doc. 92, PageID 647. In particular, the Government discussed the 1689 English Bill of Rights, a 1689 Act disarming Papists, laws enacted by the American colonies, state laws enacted during the Revolutionary War, and ratification of the Second Amendment. *Id.* at PageID 647–50. The Government also laid out laws imposing severe punishments on felons, such as capital punishment and estate forfeiture, that necessarily subsumed disarmament, dating as far back as the 1700s. *Id.* at PageID 650–51. In particular, the Government discussed a 1788 New York law, a 1777 Virginia law, a 1700 and 1705 Pennsylvania law, a 1715 Maryland law, a 1743 Rhode Island law, and a 1750 Massachusetts law. *Id.* at 650–53. All these laws demonstrate the historical tradition of those convicted of felonies not being among those entitled to possess firearms. *See also Medina v. Whitaker*, 913 F.3d 152, 158-60 (D.C. Cir. 2019) (discussing similar laws and rejecting the argument that felons have the right to bear arms). Accordingly, this Court finds the Government met its burden to show 18 U.S.C. § 922(g)(1) is consistent with the nation's historical tradition of firearm regulation. The Defendant's facial challenge therefore fails.

As for the Defendant's as-applied challenge, he argues that his 16-year-old felony convictions should not determine his right to possess a firearm. The Court finds this temporal argument unpersuasive considering the Supreme Court decision in *Heller*, and *Bruen*'s categorical recognition of the "longstanding" prohibitions on the possession of firearms by felons. *See* 554 U.S. at 626; 142 S. Ct. at 2162 (Kavanaugh, J., concurring).

In addition, this Court finds the Defendant's circumstances distinguishable from the defendants in other cases relied upon in the Motion, such as *Range* and *Bullock*. Specifically, the Defendant has prior convictions for felonious kidnapping and felonious assault. None of the Defendant's underlying felony convictions can be fairly characterized as analogous to the *Range* defendant's conviction of making a false statement to obtain food stamps. *See Range v. Att'y Gen. United States,* 69 F.4th 96, 105 (3d Cir. 2023). Further, the *Bullock* Court was unconvinced by the government's three-and-a-half-page response brief that made conclusory statements and failed to uphold its burden to show how American history supports 18 U.S.C. § 922(g)(1). *United States v. Bullock*, No. 3:18-CR-165, 2023 WL 4232309, at *30 (S.D. Miss. June 28, 2023) ("Missing from this brief, in sum, is any example of how American history supports § 922(g)(1), much less the number of examples *Bruen* requires to constitute a well-established tradition. The government has, therefore, not met its burden."). Conversely, as described above, the Government here provided ample support for the statute.[1] As such, this Court finds 18 U.S.C. § 922(g)(1) is constitutional as applied to the Defendant.

## IV. CONCLUSION

For these reasons, the Defendant's Motion (Doc. 90) is **DENIED**.

**IT IS SO ORDERED.**

---

[1] Like *Range* and *Bullock*, the other cases cited by the Defendant are distinguishable and suffer the same fate. In *United States v. Quailes*, the United States District Court for the Middle District of Pennsylvania relied upon *Range* as binding precedent in the Third Circuit and rejected the argument that the Supreme Court's references to "law-abiding citizens," in *Heller* as controlling. No. 1:21-CR-0176, 2023 WL 5401733, at *10–12. (M.D. Pa. Aug. 22, 2023). *Range* is not binding on this Court, but *Carey* and *Vaughn*, *supra*, are.

Further, in *United States v. Forbis*, the defendant's prior felonies were for possession of methamphetamine and his second DUI. No. 23-CR-133-GKF, 2023 WL 5971142, at *1 (N.D. Okla. Aug. 17, 2023). This case is also not binding in this Circuit and the *Forbis* defendant's underlying felony conviction is different in kind from the present Defendant's felonious kidnapping and assault charges where the Defendant "pistol whipped" and "tied up [a] woman with electrical tape" while "threaten[ing] to put her baby in the oven if she did not tell him," where some money was located. Doc. 92, PageID 659–60.

January 2, 2024

*Jeffery P. Hopkins*
Jeffery P. Hopkins
United States District Judge