IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| *Plaintiff*, | : |
| v. | : Case No. 1:21-cr-110 |
| JTTONALI ONE EYE EL BEY, | : |
| ("Jtton Watson") | : Judge Jeffery P. Hopkins |
| *Defendant*. | : |

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendant JttonAli One Eye El Bey's (the "Defendant") Motion for Reconsideration (Doc. 89) (the "Motion"). After review of the Motion and responsive memoranda (Docs. 91, 94), the Defendant's Motion is **DENIED**.

**I.  BACKGROUND**

On December 5, 2020, Officer Homer Wisecup, a patrol officer for the Wilmington Police Department (the "WPD"), was on patrol from 6:00 PM to 4:00 AM the following morning. Doc. 59, PageID 329–31. While on duty, Officer Wisecup received a phone call from Sergeant Meehan with the Clinton County Sherriff's Office. *Id.* at PageID 332. Sergeant Meehan informed Officer Wisecup that, while Sergeant Meehan was on duty earlier in the day, he encountered an individual who refused to identify himself. *Id.* He then identified the Defendant as the individual he encountered. *Id.* at PageID 335. Sergeant Meehan informed Officer Wisecup of the make, model, license plate number and a description of the vehicle the Defendant was driving, which had unique writing on its

exterior. *Id.* at PageID 333. Lastly, Sergeant Meehan informed Officer Wisecup that the Defendant's license was suspended. *Id.* at PageID 335. The Defendant's license was suspended on July 26, 2019, and such suspension was to remain in effect through July 26, 2022. Hr'g on Mot. to Suppress (hereinafter, "Suppression Hr'g"), Ex. 4, Jul. 14, 2022.

Later in his shift, Officer Wisecup saw a vehicle matching the description provided by Sergeant Meehan. Doc. 59, PageID 332–33, 358. Officer Wisecup requested that dispatch run the Defendant's information, which verified that the Defendant's license was in fact suspended. *Id.* at PageID 335. He then witnessed the Defendant cross the stop bar at a traffic light in violation of Ohio law. *Id.* at PageID 362.

Thereafter, Officer Wisecup stopped the Defendant at a Speedway gas station on Locus Street in Wilmington, Ohio. *Id.* at PageID 334. Officer Wisecup wore a body camera and recorded the encounter. *Id.* at PageID 333; *see also* Suppression Hr'g, Ex. 1.[1] Once Officer Wisecup stopped the Defendant, he informed the Defendant that his license was "coming back suspended." Suppression Hr'g, Ex. 1, 00:00:38-00:00:44. He also informed the Defendant that he witnessed the Defendant pull past the stop bar at a traffic light. *Id.* at 00:01:15-00:01:20. Officer Wisecup then asked the Defendant for his driver's license. Doc. 59, PageID 341. The Defendant refused the request but claimed to have identification on him. *Id.* However, the Defendant also refused to turn over any alleged identification he claimed to have. *Id.* Officer Wisecup then requested backup. *Id.* at PageID 343.

Law enforcement asked the Defendant to exit the vehicle. *Id.* at PageID 344. Initially, he refused to do so. Suppression Hr'g, Ex. 1, 00:03:32. After over one minute, the

---

[1] Both the body camera footage, and a recording of the stop by the Defendant (Doc. 63-1), have been submitted into evidence.

Defendant exited the vehicle. *Id.* at 00:03:33-00:04:45. The Defendant continued to refuse to give the officers identification despite numerous requests. Doc. 59, PageID 345. He also refused to give Officer Wisecup any information requested. *Id.* The officers then placed the Defendant under arrest. Suppression Hr'g, Ex. 1, 00:05:10.

Following the Defendant's arrest, Officer Wisecup looked into the vehicle and identified a bag of marijuana in the center console. Doc. 59, PageID 348. Thereafter, the officers unlocked the Defendant's vehicle with a "Slim Jim." *Id.* at PageID 373–74. Officers then searched the vehicle and located the bag of marijuana. *Id.* at PageID 354. Additionally, officers noticed a metal lockbox that had the key in the lock. *Id.* A firearm with ammunition was found inside of the lockbox. *Id.* The Defendant was arrested for failing to properly identify himself, in violation of Section 2921.29(A)(l) of the Ohio Revised Code, which constitutes a fourth-degree misdemeanor. Suppression Hr'g, Ex. 3. He also received a traffic citation for driving with a suspended license, in violation of Section 4510.11 of the Ohio Revised Code, and a minor misdemeanor for possession of a controlled substance, in violation of Section 2925.11 of the Ohio Revised Code. *Id.*; *see also* Doc. 59, PageID 354–55.

The WPD has specific policies relating to the towing, searching, and inventorying of vehicles following an arrest. Suppression Hr'g, Ex. 2. First, the WPD has a policy concerning the towing of vehicles at arrest scenes. *Id.* Such policy states, "[w]henever a person in charge or in control of a vehicle is arrested, it is the policy of this department to provide reasonable safekeeping by towing the arrestee's vehicle . . . ." *Id.* Second, the WPD has a vehicle inventory policy, which states [a]ll property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form." *Id.* Additionally, the vehicle

inventory policy specifically requires the search and inventory of "the trunk and any compartments or containers, even if they are closed and/or locked." *Id.*

Following the Defendant's arrest, his vehicle was towed, searched, and inventoried. Doc. 59, PageID 354, 375. During the search, the WPD found the bag of marijuana that was identified at the scene by Officer Wisecup. *Id.* at PageID 354. The WPD also located the metal lockbox that contained the firearm and ammunition. *Id.* Officer Wisecup testified at the evidentiary hearing that, based on his training and experience, the WPD's search and inventory of the Defendant's vehicle complied with WPD's policy. *Id.*

The Defendant was indicted on October 14, 2021, for possession of a firearm by a prohibited person in connection to the firearm found in his vehicle on December 5, 2020. Doc. 21, PageID 51. The Defendant sought to suppress all evidence obtained from his vehicle, including the firearm, arguing that the traffic stop and search of his vehicle violated his Fourth Amendment rights and filed a Motion to Suppress (Doc. 27) on November 15, 2021. This Court held a hearing on the Defendant's Motion to Suppress on July 14, 2022. And issued an order denying the Defendant's Motion to Suppress on December 9, 2022. Doc. 68.

The Defendant submitted the present Motion on November 8, 2023, arguing for the reconsideration of this Court's December 9, 2022, order on his Motion to Suppress. Doc. 89.

## II.     STANDARD OF REVIEW

The Federal Rules of Criminal Procedure do not provide an avenue for parties to seek reconsideration. Motions for reconsideration in a criminal case, therefore, must comply with Federal Rule of Civil Procedure 59(e)'s standards for altering or amending judgment.

*United States v. Robinson*, 5 F. Supp. 3d 933, 936 (S.D. Ohio 2014) (citing United *States v. Titterington*, No. CR. 2-20165, 2003 U.S. Dist. LEXIS 8887, 2003 WL 23924932, at *1 (W.D. Tenn. May 22, 2003)). Generally, "motions for reconsideration are looked upon with disfavor unless the moving party demonstrates: (1) a manifest error of law; (2) newly discovered evidence which was not available previously to the parties; or (3) intervening authority." *Blankenburg v. Miller*, No. 1:16-cv-505, 2017 U.S. Dist. LEXIS 139747, 2017 WL 3730610, at *1 (S.D. Ohio Aug. 30, 2017) (citations omitted). Further, while permitted, "a court should be 'extremely reluctant' to" reopen a suppression proceeding. *United States v. Stennis*, 457 F. App'x 494, 502 (6th Cir. 2012) (quoting *United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004), vacated on other grounds, 543 U.S. 1111, 125 S. Ct. 1056, 160 L. Ed. 2d 1045 (2005)).

### III. LAW AND ANALYSIS

The Defendant submits that reconsideration is appropriate to correct a clear error of law and to prevent a manifest injustice. Doc. 89, PageID 593. Specifically, the Defendant challenges: (1) whether probable stop existed to initiate the traffic stop of the Defendant; (2) whether there was evidence to support ongoing criminal activity of the Defendant; and (3) the lawfulness of the search of the Defendant's vehicle. The Defendant's challenge is not well founded.

#### A. Probable Cause to Stop the Defendant.

The Defendant asks the Court to reconsider whether law enforcement had probable cause to stop the Defendant. Specifically, the Defendant argues that Officer Wisecup did not have a sufficient reason to justify the stop of the Defendant. The Court disagrees with the Defendant.

"[I]t is the province of the district court to weigh the evidence, resolve any discrepancies which may exist, and judge the credibility of the witnesses." *United States v. Brown*, 20 F. App'x 387, 388 (6th Cir. 2001) (cleaned up). "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Collazo*, 818 F.3d 247, 254 (6th Cir. 2016). Thus, the Court must determine whether the evidence shows that Officer Wisecup "reasonably believed" that the Defendant committed a traffic violation to justify the stop of the Defendant.

Upon pulling the Defendant over, Officer Wisecup states, "the reason why I stopped you, you're coming back suspended, sir," and identifies the Defendant as "Jtton Watson." Doc. 63-1, 00:01:51-00:01:54. Officer Wisecup then asks the Defendant for his last name, to which the Defendant responds as "Bey." *Id.* at 00:01:59-00:02:02. The Defendant then queried as to why he was stopped, and Officer Wisecup responded that the Defendant drove over a "stop bar." *Id.* at 00:02:03-00:02:27. At an evidentiary hearing for the Defendant's initial motion for suppression, Officer Wisecup testified the same. Doc. 59, Page ID 362.

Pursuant to Section 4511.13 of the Ohio Revised Code, "[v]ehicular traffic . . . facing a steady circular red signal indication, unless entering the intersection to make another movement permitted by another signal indication, shall stop at a clearly marked stop line." A violation of this statute constitutes a traffic violation. Officer Wisecup witnessed the Defendant pull past the stop bar. Therefore, Officer Wisecup possessed a "reasonable

ground for belief" that the Defendant committed a traffic violation. *See Collazo*, 818 F.3d at 254.[2]

The Defendant cites *United States v. Britton*, No. 1:19-CR-00014, 2020 WL 106728 (S.D. Ohio Jan. 9, 2020), as an analogous case that supports suppression of all evidence obtained from Officer Wisecup's traffic stop of the Defendant. However, in that case, the video evidence, which showed that the defendant used his turning signal and proceeded in a legal manner, directly contradicted law enforcement's testimony supporting its probable cause determination. *Id.* at *3. Here, the video evidence, which is exclusively from inside the Defendant's truck, does not conclusively show whether the Defendant stopped before the stop bar. *See generally,* Doc. 63-1. Thus, it does not contradict Officer Wisecup's testimony, and does not show that Officer Wisecup did not have an "objectively verifiable reason for pulling over the Defendant's car at the time of the stop . . . ." *Britton*, at *3.

The Court, therefore, finds that the Defendant has not upheld his burden to show a clear error of law. Accordingly, the Court finds that law enforcement had probable cause to conduct a traffic stop.

### B. Reasonable Suspicion of Criminal Activity.

The Defendant also challenges whether there was evidence to support the proposition that he was involved in ongoing criminal activity after being stopped by Officer Wisecup.

---

[2] The Defendant again argues that supplemental video footage of the traffic stop shows that he did not cross the stop bar in question while traffic light was red. Doc. 89, PageID 597. The Court finds, as it did before, that the supplemental video evidence is inconclusive because the footage does not allow the Court to adequately determine if the Defendant did or did not cross the stop bar in question. *See* Doc. 68, PageID 453.

Even if an officer lacks probable cause that a civil infraction occurred, a stop is still constitutionally valid if the officer had reasonable suspicion of ongoing criminal activity. *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). The Sixth Circuit instructs "that a seizure for an ongoing violation of *any* crime – no matter how minor – is governed by the standard of reasonable suspicion, not probable cause." *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) (emphasis in original). Reasonable suspicion requires:

> [M]ore than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard. If an officer possesses a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts, he may conduct a *Terry* stop.

*Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008).

Courts must look to the totality of the circumstances to determine if an officer had reasonable suspicion that criminal activity is afoot. *Id.* "Pertinent circumstances include the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred." *Lyons*, 687 F.3d at 763 (quoting *United States v. Campbell*, 549 F.3d 364, 370–71 (6th Cir. 2008)). Under the collective knowledge doctrine, courts may consider "all of the information available to law enforcement personnel" when determining if reasonable suspicion exists. *United States v. Dickens*, 748 F. App'x 31, 39 (6th Cir. 2018).

The Defendant states that since "the only statute the officer believed him to be violating was driving under suspension," that there is no evidence to support that the Defendant was involved in criminal activity. Doc. 89, PageID 599. The Court disagrees.

On December 5, 2020, Officer Wisecup was informed by Sergeant Meehan that the Defendant had been driving with a suspended license, in violation of Section 4510.11 of the

Ohio Revised Code. Doc. 59, PageID 332. Sergeant Meehan made a report of an earlier encounter with the Defendant that included the make, model, and license plate number of the Defendant's truck, and indicated that the truck had unique writing on its side. *Id.* at PageID 333. The Defendant was told by Meehan that he was not allowed to drive, so the Defendant's mother later drove the vehicle away. *Id.* at PageID 335. When Officer Wisecup subsequently spotted said vehicle, he reported the license plate number to dispatch, who confirmed that it was the same vehicle that Sergeant Meehan stopped earlier – or the Defendant's vehicle. *Id.* at PageID 335–37. Moreover, Officer Wisecup indicated he had encountered the Defendant a few months earlier. *Id.* at PageID 337. Considering the totality of the circumstances, including the information of Sergeant Meehan and dispatch, and Officer Wisecup's own observations, Officer Wisecup had a particularized and objective basis for suspecting that the Defendant was driving with a suspended license in violation of Ohio law. Thus, Officer Wisecup had a reasonable suspicion of ongoing criminal activity.

The Court finds that Officer Wisecup had probable cause that the Defendant committed a traffic violation and had a reasonable suspicion of ongoing criminal activity. Accordingly, the traffic stop was constitutionally valid.

### C. Lawfulness of the Search of the Defendant's Vehicle.

It is uncontested that law enforcement did not have a warrant to search the Defendant's vehicle. As such, the Defendant also argues that the search of his vehicle does not fit into any exception that allows a warrantless search. The Defendant is wrong.

#### i. Inventory Exception.

The Defendant argues that nothing in the WPD policies allowed the towing of the Defendant's truck. The Defendant is mistaken.

"[I]nventory searches are . . . a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S. Ct. 738, 741 (1987). "It is settled law that the police may conduct an inventory search of an automobile that is being impounded without running afoul of the Fourth Amendment." *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012) (citing *United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007)). As this Court has explained:

> Discretion as to impoundment is permissible "so long as that discretion is exercised according to standard criteria <u>and on the basis of something other than suspicion of evidence of criminal activity</u>." *Bertine*, 479 U.S. at 375–76 (emphasis added). Moreover, "[i]n order to be deemed valid, <u>an inventory search may not be undertaken for purposes of investigation, **and** it must be conducted according to standard police procedures</u>." *Jackson*, 682 F.3d at 455 (quoting *Smith*, 510 F.3d at 651) (emphasis added).

*United States v. Torbert*, 207 F. Supp. 3d 808, 820 (S.D. Ohio 2016) (cleaned up).

Here, the WPD has two relevant policies. The WPD has a policy concerning the towing of vehicles at arrest scenes. Suppression Hr'g, Ex. 2. Specifically, the WPD Policy Manual Section 510.4 states, "[w]henever a person in charge or in control of a vehicle is arrested, it is the policy of this Department to provide a reasonable a safekeeping by towing the arrestee's vehicle." *Id.* The policy also states that:

> [A] vehicle shall be towed whenever it is needed for the furtherance of an investigation or prosecution of the case, or when the community caretaker doctrine would reasonably suggest that the vehicle should be towed. For example, a vehicle shall be towed if it would present a traffic hazard or if it would be in jeopardy of theft or damage if left at the scene in a high-crime area."

*Id.* The WPD also has a policy regarding inventory searches of vehicles towed and impounded. *Id.* Section 510.5 of the WPD Policy Manual states, "[a]ll property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form." *Id.*

Additionally, the policy specifically requires the search and inventory of "the trunk and any compartments or containers, even if they are closed and/or locked." *Id.*

After stopping the Defendant, Officer Wisecup approached his vehicle with a flashlight and "recognized a clear plastic baggie that as marijuana in the center console," which was illegal to possess at the time. Doc. 59, PageID 348. Pursuant to the WPD policies, the WPD then towed, searched, and inventoried, the Defendant's truck because – due to the marijuana – it was needed for the furtherance of an investigation or prosecution of a case against the Defendant. *Id.* at PageID 351. Moreover, Officer Wisecup testified that the car was parked at a Speedway gas station in a "very high-crime area." *Id.* at PageID 352. Officer Wisecup testified that the truck was towed for the secondary reason that it might be in jeopardy if left unattended at the scene. *Id.* at PageID 353. In short, the towing of the Defendant's truck fits into two provisions of the WPD towing policies.

The Court therefore finds that impoundment of the Defendant's vehicle was permissible. Accordingly, the inventory exception applies.

   ii.   **Inevitable Discovery Doctrine.**

In *Nix v. Williams*, the Supreme Court adopted the inevitable discovery doctrine as an exception to the exclusionary rule. 467 U.S. 431, 443 (1984). "The inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." *United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022) (cleaned up). It is the Government's burden to show, by a preponderance of the evidence, "that the [evidence] ultimately or inevitably would have been discovered by lawful means . . . ." *Nix*, 467 U.S. at 444.

The Sixth Circuit has outlined two scenarios where the inevitable discovery exception applies. *See Cooper*, 24 F.4th at 1091. First, the exception applies when "an independent, untainted investigation" was bound to uncover the evidence. *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995). Second, the inevitable discovery exception applies "when other compelling facts demonstrate that discovery was inevitable." *Cooper*, 24 F.4th at 1091 (internal quotations omitted).

Like this Court previously found, the Court finds that this case falls into the second scenario. The Defendant was arrested by the WPD, which has a policy of towing vehicles at arrest scenes. Doc. 59, PageID 350–51. After the Defendant's arrest, his vehicle was towed, searched, and inventoried in accordance with WPD policies. *Id.* at PageID 354. During the search of the Defendant's vehicle, WPD found the bag of marijuana identified by Officer Wisecup at the scene. *Id.* The WPD also found the metal lockbox containing the firearm and ammunition. *Id.* Lastly, Officer Wisecup testified that, based on his training and experience, the WPD's search and inventory of the Defendant's vehicle while impounded complied with the WPD's policy manual. *Id.* As such, the Court finds that the facts demonstrate that discovery of the evidence within the Defendant's vehicle was inevitable.

The Court finds that the government satisfied its burden to show, by a preponderance of the evidence, that the evidence would have been discovered by lawful means. Thus, the inevitable discovery doctrine applies.[3]

---

[3] The Government also argues that the plain view and automobile exceptions apply, which the Defendant addressed in its reply. Because the Court finds that the evidence obtained inevitably would have been discovered by lawful means, satisfying the inevitable discovery exception, the Court need not address those exceptions.

IV.     **CONCLUSION**

For these reasons, the Defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**

January 18, 2024

                                              Jeffery P. Hopkins
                                          United States District Judge